# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **K.R.**

**No. 21-0790** (Harrison County 21-JA-18-1)

## MEMORANDUM DECISION

Petitioner Father C.R., by counsel Julie N. Garvin, appeals the Circuit Court of Harrison County's August 3, 2021, order terminating his parental rights to K.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Allison S. McClure, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him a post-adjudicatory improvement period and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2021, the DHHR filed a child abuse and neglect petition against petitioner and the mother. The DHHR alleged that the mother was admitted to the hospital to give birth to the child and that, upon admission, she tested positive for amphetamine and THC. The mother further admitted that she abused heroin, methamphetamine, and buprenorphine during the pregnancy. A Child Protective Services ("CPS") worker spoke to the mother, who reported that petitioner was the father of the child and that he knew of her drug abuse during the pregnancy. The mother further indicated that petitioner had been incarcerated for a portion of her pregnancy due to being "caught with [a]mphetamine." According to the mother, petitioner had previous substance abuse issues. The CPS worker also spoke with nurses at the hospital, who reported that petitioner

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

used an unauthorized bathroom in the triage area and that cleaning personnel found a razor blade after he exited the bathroom. The nurse additionally reported observing petitioner engaging in unsafe sleep practices with the newborn child, such as falling asleep with the child on his chest.

Upon further investigating petitioner's criminal history, the CPS worker discovered that petitioner had multiple convictions, including a conviction for possession with intent to deliver a controlled substance in 2020. Petitioner was sentenced to one to five years of incarceration, which was suspended in favor of probation. The DHHR alleged that, earlier in January of 2021, the State filed a motion to revoke petitioner's probation after he failed a drug screen, failed to check in with his probation officer, failed to answer the door during an unannounced visit by his probation officer, and failed to complete his addiction severity interview. Based on the foregoing, the DHHR concluded that petitioner knew or should have known that the mother was abusing substances while pregnant but failed to protect the child.

The circuit court held an adjudicatory hearing in March of 2021. The DHHR introduced multiple exhibits and presented the testimony of a CPS worker and petitioner. The evidence established that petitioner had prior drug-related convictions, that he had an active drug addiction, and that he had abused heroin and fentanyl as recently as February of 2021. Petitioner was also incarcerated and, by his own admission, could not assume care, custody, and control of the child. Accordingly, the circuit court adjudicated petitioner as a neglectful parent, finding that "he has a substance abuse problem that led to the neglect of the child, [K.R.], including his failure to protect [the child] from [the mother's] substance abuse, and cannot assume care of the child due to his incarceration."

In July of 2021, the circuit court held a dispositional hearing. The DHHR submitted petitioner's sentence and commitment order in his criminal matter and requested that the circuit court take judicial notice of the evidence presented at the adjudicatory hearing. Petitioner requested a post-adjudicatory improvement period. The DHHR presented the testimony of a CPS worker, who stated that petitioner had been incarcerated since February of 2021 and that his expected release date was not until May of 2023. The CPS worker testified that petitioner had not seen the child due to his incarceration and as a result, had no bond with the child. Further, he had not contacted the CPS worker during his incarceration to ask about the child's welfare. The CPS worker recommended that petitioner's parental rights be terminated. On cross-examination, the CPS worker admitted that she had not attempted to contact petitioner at his correctional facility and acknowledged that he would have a parole hearing in November of 2021.

Petitioner testified in support of his motion for an improvement period. He confirmed that he would be eligible for parole in November of 2021 and that he could participate in classes such as parenting and adult life skills classes and substance abuse classes at his place of incarceration. Petitioner testified that he had already applied to participate in some classes, was assigned a job, and applied to take some college classes. Petitioner stated that he would comply with any services required of him if he were granted an improvement period. He admitted that he was still in a relationship with the mother, who had not complied with drug screens or other services. Petitioner further admitted that he had a substance abuse problem.

2

By order entered on August 3, 2021, the circuit court denied petitioner's request for a post-adjudicatory improvement period and terminated his parental rights. The circuit court found that petitioner had a drug abuse problem and failed to comply with the terms of his probation, resulting in his incarceration when the child was just one month old. The court found that petitioner knew he was about to become a father yet violated the terms and conditions of his probation. Petitioner's conduct resulted in his incarceration until approximately May of 2023, unless he is paroled earlier. The court noted that, although he would become parole eligible in November of 2021, his release was not guaranteed. The circuit court further found that the child would be ten months old by the time petitioner would become eligible for parole, has known no other home than her foster home, and would be even more bonded with her current placement by petitioner's potential release. The circuit court noted that petitioner had seen the child only at her birth and one other time before becoming incarcerated. Moreover, due to petitioner's incarceration, there would be no way he could meaningfully participate in an improvement period. Additionally, the circuit court found that petitioner failed to contact the DHHR to inquire about the well-being of the child and remained in a relationship with the mother whose failure to participate in the proceedings resulted in the termination of her parental rights to the child. The court concluded that petitioner's substance abuse history, the uncertainty of his release date, the child's tender years, and petitioner's inability to comply with the terms and conditions of his probation, supported its decision. Based on the foregoing, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect in the near future and that termination of his parental rights was necessary for the child's welfare. Petitioner appeals the circuit court's August 3, 2021, dispositional order terminating his parental rights.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. According to petitioner, he filed an appropriate motion and "was able to demonstrate compliance to the best of his ability." At disposition, petitioner listed the

---

[2]The mother's parental rights were also terminated during the proceedings below. The permanency plan for the child is adoption by the foster family.

services he would comply with, stated his desire and need for an improvement period, and noted that he had not yet been granted an improvement period during the matter. Petitioner avers that he should have been given the opportunity to bond with the child and that an improvement period would have been in the child's best interest.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). The circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that he was likely to fully participate in an improvement period. While petitioner testified that he would comply with an improvement period and had enrolled in classes at his correctional facility, his continued incarceration created a barrier to his ability to meaningfully participate in an improvement period. Although petitioner allegedly signed up for some classes, he had not yet been accepted into any of the classes as of the dispositional hearing. Further, petitioner could not visit with the child or apply any parenting skills learned during his incarceration. Moreover, petitioner's release on parole was not guaranteed.[3] Even assuming that petitioner was to be paroled in November of 2021, four months of his improvement period would have passed during his incarceration, leaving only two months of a six-month improvement period for him to remedy the conditions of abuse and neglect upon his release. As noted by the circuit court, petitioner saw this child very little before his incarceration and the child had bonded with her foster family. Such bond would only increase with time, and the child would be over two years old by the time petitioner discharged his sentence. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4 (citation omitted). Based on the foregoing, we find no error in the circuit court's decision to deny petitioner's motion for an improvement period.

Petitioner next argues that the circuit court erred in terminating his parental rights. Specifically, petitioner avers that the circuit court's basis for terminating his parental rights was premature and insufficient to support such a disposition. Petitioner claims that the circuit court could have adequately protected the child by employing a less restrictive alternative disposition, such as disposition under West Virginia Code § 49-4-604(c)(5), which would have allowed for petitioner to "restore [his parental] rights" after demonstrating that he possessed the ability to properly care for the child. Petitioner admits his inability to "be a good parent right now" but claims that the situation is not permanent. According to petitioner, this less restrictive disposition

---

[3]Indeed, the guardian indicates that petitioner continued to be incarcerated as of April of 2022.

4

provides the same protection to the child, and the circuit court could have modified disposition at a later date if the permanency plan required adoption. As such, petitioner argues that termination of his parental rights was error.

We disagree. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, the record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. Specifically, petitioner failed to comply with the terms and conditions of his probation, which resulted in his incarceration shortly after the child's birth. Due to his incarceration, petitioner was unable to comply with services aimed at remedying the conditions of abuse and neglect. While the circuit court considered that petitioner would become parole eligible in November of 2021, there was no guarantee that he would be released, and the guardian avers on appeal that petitioner remained incarcerated as of April of 2022. Absent his release on parole, petitioner will not discharge his sentence until the child is over two years old. The child has been with her foster family since birth and is bonded to them and will undoubtedly be more bonded by the time petitioner is released from incarceration. Further, petitioner remained in a relationship with the mother throughout the proceedings despite her failure to participate in services, which led to the termination of her parental rights, and he failed to contact the DHHR to inquire about the child. These factors, which were considered by the circuit court, are sufficient to support a finding that there is no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

While petitioner argues that the circuit court could have employed a less restrictive alternative to the termination of his parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the abovementioned evidence, we find no error in the circuit court's decision to terminate petitioner's parental rights to the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 3, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn